**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RENE DELGADO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.** |
| **v.** | ) | |
| | ) | |
| **UNION PACIFIC RAILROAD COMPANY** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**NOW COMES** the Plaintiff **RENE DELGADO**, by and through his attorneys, John S. Bishof, Jr. of the Law Office of John Bishof PC and Daniel J. Downes of Daniel J Downes PC, for his causes of action against the Defendant, **UNION PACIFIC RAILROAD COMPANY**, and states and alleges as follows:

## PARTIES

1. Plaintiff, **RENE DELGADO**, (hereinafter referred to as "**DELGADO**,") was, and at all times herein mentioned, a resident of Cook County, Illinois.

2. Defendant, **UNION PACIFIC RAILROAD COMPANY (hereinafter "UPRR")**, is now, and at all times relevant hereto, a corporation duly organized and existing according to law engaged in business as a common carrier by rail in interstate commerce. The **UPRR's** principal place of business is located in Omaha, Nebraska. **UPRR**, at all relevant times, does business as a common carrier by rail in counties of Illinois to include the County of Cook. The **UPRR**, also, owns, operates and controls many miles of track, rail yards and related facilities throughout the County of Cook, State of Illinois.

3. At all times relevant, defendant, **UPRR**, was and is subject to the provisions of the Federal Railroad Safety Act, including the Whistle Blower provisions of 49 U.S.C. 20109 as it relates to the employment of **DELGADO** by **UPRR**.

4. At all times relevant, defendant, **UPRR**, was and is subject to the provisions of the Federal Employers' Liability Act, 45 U.S.C. §§ 56 *et al.***(FELA)**.

5. At all times relevant**, DELGADO** was an employee of **UPRR** and assigned to the Proviso Yard facility that is owned, operated and controlled by **UPRR** located at 301 West Lake Street, City of Northlake, County of Cook, Illinois.

**JURISDICTION AND VENUE**

6. All acts that plaintiff has alleged in this complaint have occurred in this District.

7. This Court has jurisdiction over Defendant **UPRR** and venue is proper in this court under 28 U.S.C. § 1331 since this a civil action brought pursuant to the Federal Rail Safety Act (FRSA) as amended, 49 U.S.C. § 20109 *et seq.*. 29 CFR Part 1982; 29 CFR § 1982.114 and the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 56.

**COUNT I (FELA)**

Plaintiff, **DELGADO**, for his first cause of action against the Defendant, **NSRC** herein states and alleges as follows:

1-7. Plaintiff, **DELGADO**, adopts and realleges paragraphs 1 through 7 as paragraphs 1 through 7 of Count I.

8. **DELGADO** was a maintenance of way foreman for **UPPR.**

9. On October 14, 2010 at approximately 10:00 am, **DELGADO** was assigned to the 3181 gang crew and was on his way to the west end of the hump yard to repair switch 59 58.

10. While walking to the switch needing the repair, **DELGADO** stepped on a discarded rusty piece of metal that was hidden in the ballast which punctured his work boot and entered his right foot causing injury to **DELGADO**.

11. Plaintiff suffered serious and permanent injuries to his right foot as a result, in whole or in part, by **UPPR**'s negligence, specifically:

a. Defendant negligently failed to provide Plaintiff with a reasonably safe place to work;

b. Defendant negligently failed to reasonably inspect and/or maintain the specific area where Plaintiff was walking to reach his assignment;

c. Defendant negligently failed to reasonably construct a safe walkway in an area where Defendant knew or should have known workers would be required to walk to perform their duties;

d. Defendant negligently failed to reasonably maintain an area where Defendant knew or should have known workers would be required to walk to perform their duties;

e. Defendant negligently failed to reasonably keep clear of debris an area where Defendant knew or should have known workers would be required to walk to perform their duties;

f. Defendant negligently failed to reasonably inspect an area where Defendant knew or should have known workers would be required to walk to perform their duties;

g. In failing and neglecting to properly warn Plaintiff that said walk areas were unsafe;

h. In negligently creating and permitting dangerous and hazardous conditions to exist on on said walk areas;

i. Other negligence.

12. As a result, in whole or in part, of Defendant **UPPR**'s negligence, as set forth above, Plaintiff suffered serious and permanent injury to his right foot; Plaintiff has received in the past and will in the future receive medical treatment for his injuries, in costs Plaintiff is unable to accurately determine at this time; Plaintiff has in the past and will in the future suffer emotional and physical

pain;

13. As a further result, in whole or in part, of Defendant **UPPR**'s negligence, as set forth above, Plaintiff has in the past and will in the future lose wages and/or suffer a loss or diminution of earning capacity, including loss of fringe benefits in an amount Plaintiff is unable to accurately estimate at this time;

14. By reason of each and all of the facts stated above, Plaintiff has suffered damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff asks this Court to enter judgment in his favor and against Defendant **UPPR**, in such an amount sufficient to fully compensate Plaintiff for damages and injuries to be proven at trail for its costs and disbursements.

## COUNT II

Plaintiff, **DELGADO**, for his second cause of action against the **UPPR ,** herein states and alleges as follows:

1-10. Plaintiff, **DELGADO**, adopts and realleges paragraphs 1 through 10 of Count I as if originally pled herein.

11. **DELGADO**'s injury occurred when a sharp and rusty piece of scrap metal, concealed in the ballast, punctured his right work boot and right foot, as he was walking to his work assignment. His co-workers Benny Mendoza and Jeremy Jones were with him at the time. Mr. Delgado felt immediate sharp and severe pain and instructed his two co-workers Benny Mendoza and Jeremy Jones to transport him to Elmhurst Hospital.

12. Once inside the truck with his co-workers, **DELGADO** attempted to call and notify Andrew Bronkenkamp, the General Manager of Track Maintenance, of his injury and of his request

to be taken to Elmhurst Hospital (nearest hospital), however he was unable to reach Andrew Brokenkamp. Mr. Delgado then called General Foreman, Aurelio Orozco, and informed him of his injury and intention to go to the hospital.

13. A short time later Mr. Orozco called **DELGADO** back and told him, per orders of Director, Jason Rea,. not to go to the hospital, but to turn back and report to the Administration Building in Proviso Yard,

14. **DELGADO** complied. He returned to the administration building at Proviso Yard and reported to Director Jason Rea.

15. After "checking" **DELGADO**'s injury, Director Rea made the medical determination that Mr. Delgado should not be taken to the hospital, as he requested, but instead to the clinic where the company doctor is located.

16. At the clinic, plaintiff was given medication, instructed to stay off his foot, and then taken in a wheelchair to a back room and given a drug test. During this time **DELGADO** had much pain and difficulty standing.

17. Plaintiff was then taken back to Proviso Yard, while on crutches, and once there he recalled that one of the clinic nurses had stated thata part of his medical care, he was to receive a tetanus shot but had failed to administer it.

18. Mr. Delgado was then driven back to the clinic for a tetanus shot and once again taken back to the Proviso Administrative Building where he was questioned by a Union Pacific investigation officer. He was instructed to report at Proviso Yard for light-duty the next day, even though the company doctor had instructed him to stay off his feet.

19. **DELGADO**, who was on crutches and unable to drive, was then driven to his home

by General Foreman Orozco.

20. On Friday, October 15, 2010, plaintiff called his supervisor and complained that the pain was so bad he could not return to work for light duty. His pain had worsened from the previous day and he called the clinic to report the extreme pain. **DELGADO** was instructed to "come in for more medications".However, he informed the clinic that he was restricted from driving and could not return to the clinic.

21. On Saturday, October 16, 2010,plaintiff's pain was so intense he went to Loyola Hospital, in Maywood , IL where he was admitted and underwent treatment, including surgery, for his badly infected foot. He was directed to remain off work for several months until the foot could properly heal.

22.. The **UPPR** , through it's supervisory employees, violated 49 U.S.C. § 20109 (c) (1) (**FRSA**) in refusing to take plaintiff to the hospital as he requested. The defendant railroad then compounded its violation in causing delay and interference with prompt and obviously necessary medical treatment.

23. After returning from the clinic the second time, **DELGADO** was ordered by Director Rea, to participate in the investigation and re-enactment of the incident even though plaintiff was instructed, by the medical provider at the clinic to "stay off his feet."

24. **DELGADO** was also ordered to provide a statement of what occurred that caused his injury even though plaintiff was in pain and under the influence of medication for said pain.

25. Plaintiff complied with all the orders of the railroad which resulted in being treated in a clinic of the railroad's choosing rather than at a nearby hospital, as he had requested and where he should have received medical care initially.

26. These actions of the **UPPR** delayed plaintiff from receiving adequate and proper medical treatment and following the doctors treatment plan, all of which caused him to suffer additional pain and disability due to interference with has requests and treatment plan.

27. **UPPR**'s conduct was intended to intimidate and harass **DELGADO** and his fellow workers in reporting injuries and seeking competent professional medical services at an adequate medical facility in close proximately to the location at which they are injured, in violation of **FRSA**.

28. The **FRSA** was specifically violated by the **UPPR** when it ordered plaintiff to return to the work place and report to the administration building at the Proviso Yard facility at the time plaintiff's crew members were en route to Elmhurst Hospital.

29. **UPPR** further violated the **FRSA** when it ignored plaintiff's request for medical attention and insisted that he return back to the work place to participate in the investigation and re-enactment of the incident even though plaintiff was instructed, by the medical provider at the clinic to "stay off his feet."

30. These inconsiderate and unlawful acts of **UPPR** at a time plaintiff was on medication, on crutches, and in great discomfort served to intimidate him and his fellow employees.

31. **UPPR**'s, conduct was clearly intended to intimidate plaintiff and other employees of **UPPR** , from reporting and notifying defendant of injuries sustained at the work place.

32. **UPPR's** actions clearly delayed, denied and/or interfered with the medical treatment of plaintiff who was injured during the course of his employment.

33. Defendant's conduct as described herein is in violation of plaintiff's rights under the Federal Railroad Safety Act, as amended, 49 U.S.C. § 20109 *et seq.*. 29 CFR Part 1982; 29 CFR § 1982.114.

34. On or about March 25, 2011, plaintiff filed a complaint with OSHA against defendant contending the same allegations made herein and was assigned Cause Number 5-2230-11-032.

35. On March 26, 2012 plaintiff, pursuant to 29 CFR § 1982.114, notified the Assistant Secretary, the Regional Administrator of OSHA and the Associate Solicitor, Division of Fair Labor Standards, USDOL that he would be filing his complaint in the United States District Court for the Northern District of Illinois since the Secretary of Labor had not issued a final decision and 210 days had passed since the filing of the complaint with OSHA and that there was no showing that the delay was due to bad faith of the plaintiff.

36. Plaintiff has satisfied all administrative prerequisites in that a copy of this complaint has been filed with the Assistant Secretary, the and this complaint is timely and properly filed in this court pursuant to 29 CFR § 1982.114.

37. As a result of defendant's violation of 49 U.S.C. § 20109 *et seq.*, plaintiff has suffered and continues to suffer consequential and compensatory damages for which relief is sought herein and which are properly recoverable under the provisions of 49 U.S.C. § 20109, including reinstatement, compensatory and punitive relief available under the law with costs and other damages, and attorney's fees that will discourage the defendant from continuing its retaliatory course of conduct against employees who report personal injuries, seek medical treatment or unsafe practices and procedures at the work place.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant **UPPR** in a sum which is fair and reasonable and in an amount which will fully and completely compensate him and for such other and further relief to which he may appear entitled.

RESPECTFULLY SUBMITTED,

BY: /s/ John S. Bishof

**John S. Bishof, Jr.**

Law Office of John Bishof P.C.
77 West Washington St
Suite 1910
Chicago, IL 60602
312-630-2048