## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RENE DELGADO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 2596 |
| | ) | Judge John J. Tharp, Jr. |
| v. | ) | |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum Opinion

Before the Court is Defendant Union Pacific Railroad Company's ("Railroad") motion to dismiss Count II of the Complaint filed by Plaintiff Rene Delgado. The motion presents the question of whether the Federal Railroad Safety Act ("FRSA") provides a private right of action to redress a claim that a railroad carrier denied, delayed, or interfered with the medical treatment of an employee of the railroad carrier who was injured during the course of employment. The Court concludes that it does and therefore denies the Railroad's motion to dismiss.

### Background[1]

Delgado alleges that, on October 14, 2010, while walking through a railroad yard on his way to repair a malfunctioning switch, he cut his foot on a rusty piece of scrap metal that had been discarded and was hidden from sight. Cmplt. ¶¶ 9-10.[2] Delgado immediately asked two co-workers to take him to a nearby hospital; on the way, Delgado phoned a foreman at the

---

[1] The Court assumes the truth of Delgado's allegations for purposes of evaluating the Railroad's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (on motion to dismiss, "factual matter" is "accepted as true").

[2] The complaint confusingly numbers the allegations of its counts separately; the result is that there are two paragraphs numbered 11-14; references to those paragraphs refer to the paragraphs included in Count II.

1

Railroad and advised him that he was on his way to the hospital. Cmplt. ¶¶ 11-12. Shortly after that call, the foreman called Delgado and told him that a more senior official, Director Rea, had ordered Delgado not to go to the hospital and to return to the Administration building. Cmplt. ¶ 13.

Delgado complied and reported to Director Rea in the Administration building. Cmplt. ¶ 14. After checking Delgado's injury, Rea again instructed Delgado not to go to the hospital, and directed him instead to the on-site clinic where the company doctor worked. Cmplt. ¶ 15. At the clinic, Delgado was examined, given medication, and instructed to stay off his foot. Cmplt. ¶ 16. Delgado left the clinic before receiving a tetanus shot, but then remembered that a nurse had indicated that he was to receive one and so returned to the clinic and received the shot. Cmplt. ¶ 17-18. Afterward, he was again taken to the Administration building where he was questioned about the injury and required to participate in a "re-enactment of the incident," even though the company medical provider had instructed that he was to stay off his feet. Cmplt. ¶¶ 18 and 23. Delgado's foreman then drove him home. Cmplt. ¶ 19. He was instructed to report for "light duty" the next day, notwithstanding the doctor's instruction that he stay off his feet. Cmplt. ¶ 18.

The next day, Delgado's pain had increased and he called his supervisor and complained that the pain was so bad that he could not return to work for light duty that day. Cmplt. ¶ 20. The following day, October 16, his pain was so intense that he went to a hospital, where he was admitted and underwent treatment, including surgery, for his badly infected foot. Cmplt. ¶ 21. Delgado was directed to remain off work for several months until his foot could heal properly. Cmplt. ¶ 21. He does not allege that the Railroad took, or threatened, any disciplinary action as a result of his injury or his pursuit of medical treatment for the injury.

## Discussion

In Count II, Delgado seeks redress for the Railroad's alleged violation of Section 20109(c)(1) of FRSA, which prohibits a railroad carrier (or employees thereof) from acting to "deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment." And apropos of the allegations in this case, this section goes on to provide that if an injured employee requests transport to the nearest hospital to obtain treatment for the injury, "the railroad shall promptly arrange" to have the employee transported to that hospital.

There is no question here about whether Delgado has sufficiently alleged that the Railroad denied, delayed, or interfered with his medical treatment after he was injured on the job. Plainly, he has (and the Railroad does not argue otherwise). The issue is whether Delgado has any right of action based on those allegations. The Railroad argues that the statute provides a right of private action only to employees who have been disciplined or threatened with discipline for requesting medical treatment—not to employees, like Delgado, who allege no disciplinary action.

The Railroad's position centers on subsection (d)(1) of Section 20109, which provides a private right of action to an employee "who alleges discharge, discipline, or other discrimination in violation of subsection (a), (b) or (c) of this section." As noted, Delgado does not allege that he was discharged or disciplined for seeking medical treatment, so those bases for a private right of action plainly do not apply.

That leaves "other discrimination" as the only statutory basis for Delgado's attempt to enforce subsection (c)(1)'s prohibition against interference with an employee's efforts to obtain medical treatment for a workplace injury. The Railroad maintains that there is no such thing as

"discrimination in violation of" subsection (c) because it does not prohibit "discrimination" based on an employee's pursuit of medical treatment; instead, subsection (c)(2) states that a railroad carrier "may not discipline, or threaten discipline to, an employee" who seeks medical treatment. By contrast, subsections (a) and (b) of Section 20109 do prohibit any form of "discrimination" (not just disciplinary action) in retaliation for other forms of protected activity. An employee cannot allege "other discrimination in violation of subsection . . . (c)," the Railroad argues, because subsection (c) does not expressly prohibit any "other discrimination" in retaliation for seeking medical treatment.

The Railroad's interpretation requires one to assume that, in an effort to protect an injured employee's right to seek medical care, Congress enacted a scheme that precludes a carrier from taxing (after the fact) an employee's pursuit of medical care by means of a disciplinary action but provides no protection at all to an employee whose right to seek medical care is obstructed or even denied altogether. Common sense suggests that guarding against a lesser evil while ignoring the greater is not what Congress had in mind, and while "common sense is a treacherous guide to statutory interpretation," *Kerry v. Puckett,* 138 F.3d 321, 323 (7th Cir. 1998), it provides ample reason to question the validity of the Railroad's counter-intuitive interpretation. *See, e.g., Smith v. Zachary,* 255 F.3d 446, 450 (7th Cir. 2001) ("no canon of statutory interpretation requires us to abandon common sense"). Delgado's briefs hammer the illogic of the Railroad's interpretation repeatedly, yet the Railroad never offers any rationale to explain why Congress would permit private enforcement to redress a lesser infringement of the right to seek medical treatment (after-the-fact discipline) while denying a private right to remedy the greater infringement (denying access to medical treatment). Instead, it simply asserts that the language of the statute is plain and that no further inquiry is needed or permitted.

4

The Court agrees that the language of subsection (c) is plain; the problem is that the Railroad is only reading half of it. In arguing that subsection (d) provides a means of enforcing violations of subsection (c) only to "employees *who have been disciplined*," the Railroad focuses exclusively on the provisions of subsection (c)(2) to the exclusion of subsection (c)(1). While it is true that subsection (c)(2) prohibits only disciplinary action for seeking medical treatment, it is equally true that subsection (c)(1) prohibits interference with an employee's efforts to obtain medical treatment. Subsection (c) comprises *both* prohibitions, and subsection (d)(1)—which remedies "discharge, discipline, or other discrimination in violation of "subsection ... (c)"—is plainly not limited to subsection (c)(2).[3] The statute authorizes private enforcement if an employer violates either subsection—that is, if the employee alleges discharge, discipline, "*or other discrimination*" in violation of either (c)(1) or (c)(2).

When subsection (d)(1) is applied to subsection (c) in its entirety—as its plain language requires—the result makes far more sense. Subsection (d)(1) permits private enforcement of discrimination in violation of (c)(1), and Delgado argues, and the Court agrees, that the obstruction of an injured employee seeking medical attention is itself discrimination against an employee and therefore provides a basis for private enforcement under subsection (d)(1).

The Court has no difficulty in construing the denial of medical treatment as discrimination against an employee who may potentially disclose a hazardous condition at the work site. Indeed, and as adverted above, denying medical treatment may often constitute a far more significant form of discrimination against an injured employee than would an after-the-fact disciplinary action. Seeking medical treatment for a workplace injury is likely, if not almost

---

[3] In essence, the Railroad reads the provision authorizing private enforcement as if it said: "An employee who alleges discharge, discipline, or other discrimination in violation of subsection (a) or (b), or who alleges discipline in violation of subsection (c)(2), may seek relief..." This is not, however, the language that Congress employed.

certain, to lead to the disclosure of the hazard that caused the injury and, in that light, a carrier's efforts to "deny, delay, or interfere" with an injured employee's pursuit of medical treatment can easily be understood to constitute a form of discrimination, and retaliation, against such an employee.

This reading does violence neither to logic nor to canons of statutory construction. It is consistent with both the plain language of the statute and the statute's ostensible purpose to provide "employee protections" to those who disclose dangerous conditions and safety hazards. It avoids an interpretation that presumes that Congress enacted a statute that gives employees the right to seek redress from minor disciplinary actions but not from actions that deny them access to prompt medical treatment and put their health and well-being at risk. The Railroad has provided no basis, in either the language of the text, canons of construction, or logic, to justify reading the statute in the manner that it advocates.

The Court therefore concludes that Section 20109 provides a private right of enforcement to an employee, like Delgado, who alleges that a railroad carrier violated the provisions of subsection (c)(1) by denying, delaying, or interfering with the medical or first aid treatment of an employee injured during the course of employment. The allegations of Delgado's complaint, taken as true for purposes of this motion, plainly suffice to state a claim that the Railroad denied, delayed, or interfered with his medical treatment for a workplace injury. Accordingly, the Railroad's motion to dismiss Count II of the complaint, asserting a claim under Section 20109, is denied.

Entered: October 11, 2012

United States District Judge